

# NUMBER 13-24-00577-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

CYNTHIA LOVE,                                                                      Appellant,

v.

KASPAR RANCH HAND
EQUIPMENT, LLC,                                                                   Appellee.

## ON APPEAL FROM THE 2ND 25TH DISTRICT COURT
## OF LAVACA COUNTY, TEXAS

## OPINION

**Before Justices Silva, Cron, and Fonseca**
**Opinion by Justice Fonseca**

Appellant Cynthia Love was injured in a workplace accident and sued her employer, appellee Kaspar Ranch Hand Equipment, LLC (Kaspar). The trial court granted Kaspar's motion to compel arbitration, and an arbitrator ruled in favor of Love; however, the trial court granted Kaspar's petition to vacate the arbitrator's award. *See* 9 U.S.C. § 10

(setting forth grounds for vacatur of an arbitral award under the Federal Arbitration Act (FAA)). In this appeal, Love argues by three issues that the trial court erred by vacating the award. We affirm.

## I.   BACKGROUND

### A.   Pre-Arbitration

In February 2017, Love began working at Kaspar's truck accessory manufacturing facility in Shiner. As part of her job, she operated a machine that bent large pieces of metal to be incorporated into grill guards. Love was injured on March 21, 2017, when, she alleges, "loose material" on her employer-provided glove got caught in the machine. Her left hand was drawn into the machine and crushed, and, despite several surgeries, three of her fingers had to be partially amputated.[1]

Love sued Kaspar in October 2018, alleging negligence, gross negligence, and premises liability. On November 21, 2018, Kaspar's counsel sent Love's counsel a letter advising that her claims "are subject to binding arbitration" and noting that she had signed an "Acknowledgment of Arbitration Policy" form upon beginning her employment. The arbitration policy attached to the form reads in relevant part as follows:

**I. CLAIMS SUBJECT TO ARBITRATION**

    **A.**   **Covered Claims.** [Kaspar] and you are subject to final and binding arbitration of all claims, controversies, and disputes arising out of or relating to the application or candidacy for employment, employment or cessation of employment with [Kaspar], whether now, existing, or arising in the future.

        The claims, disputes and controversies subject to final and binding arbitration under this Policy include, but are not limited to, claims for . . . [Kaspar]'s negligence, gross negligence, strict liability, intentional act, omission, or any other claim or cause of action with

---

[1] According to Kaspar, it paid Love's "reasonable and necessary medical bills" and it terminated her employment "for cause in accordance with company policy" in August 2018.

respect to any employment related injuries, trauma or illnesses[.]

    . . . .

## II. ARBITRATION PROCEDURES

    . . . .

A.     **Governed By [FAA].** Arbitration will be governed by the [FAA], 9 U.S.C. [§§] 1–14 . . . . [Kaspar] is engaged in interstate commerce (e.g., purchasing goods and services from outside Texas which are shipped to Texas and providing goods and services to customers traveling interstate) and your employment involves such commerce. The [FAA] will govern the interpretation and enforcement of the arbitration proceedings. *An arbitrator's decision can be challenged in a state or federal court of law only on such basis as may be available under the* [*FAA*] *or on the basis that the arbitrator's decision constitutes a manifest disregard of the law.*

    . . . .

B.     **Requisition [of] Arbitration.** You must provide written notice to the Director of Human Resources or, if none, to the President of [Kaspar] of your desire to arbitrate a claim. . . . The notice must be in sufficient detail to provide [Kaspar] notice of the allegations of your complaint. At that stage, [Kaspar] has two options: (i) schedule the claim for mediation; or (ii) notify you to submit the claim to the Judicial Workplace Arbitration, Inc. ("JWA") or other arbitration service as agreed by [Kaspar] and you. . . . If mediation is not set, [Kaspar] must give you notice to submit the claim to arbitration at JWA. . . .

    Upon notification by [Kaspar] that you must submit your claim to [JWA] or other arbitration service as agreed by [Kaspar] and you, you must submit your claim within a reasonable time after the dispute, claim, controversy, or other matter in question has arisen. In no event shall your claim be made after the date when institution of legal or equitable proceedings based on such claim, controversy, dispute, or other matter in question would be barred by the applicable statu[t]es of limitations. Claims are irrevocably waived if not brought within such period.

    . . . .

F.     **The Hearing.** . . . The burden of proof for any claim brought to arbitration by either party will be the same burden of proof that exists in a court.

G.     **Arbitration Procedures.** The arbitrator conducts the hearing so all

evidence and arguments are presented fully and efficiently. All arbitrations (prior, during, and after the hearing) must follow the Texas Rules of Civil Procedure and Evidence, unless otherwise decided by the arbitrator or otherwise agreed by the parties.

    1. *Arbitrator Resolves Disputes*. Once appointed, the arbitrator will resolve all disputes about the interpretation and applicability of these rules, including disputes relating to the duties of the arbitrator and the conduct of the arbitration hearing. The resolution of the issues by the arbitrator is final.

    . . . .

    6. *Arbitration Decision*. Based on the evidence presented at the hearing, the arbitrator will make all final and binding decisions. *All issues that may be dispositive with respect to a claim will be ruled on by the arbitrator. The decision will be rendered in writing and include at least a summary of all findings of fact and law necessary to support the arbitrator's decision.* The arbitrator can award the winning party the same recovery the party would be entitled to in a court of law (and such award will also be subject to the same limitations used by courts of law, such as statutory limitations on punitive damages). The arbitrator is authorized only to rule on the claims set forth in the request for arbitration and counterclaim(s) and the answer(s) thereto. The arbitrator is not authorized to modify the powers granted to him or her under this Policy document or to make any award merely on the basis of what he or she determines to be fair or just.

(Emphases added.) On November 26, 2018, Kaspar filed a motion to dismiss and to compel arbitration based on this policy.

The trial court held a hearing on Kaspar's motion on April 3, 2019, and it issued a letter ruling granting the motion on April 16. During the process of exchanging draft orders, Love's counsel emailed Kaspar's counsel on September 23, 2019, asking whether Kaspar "wishes to exercise the pre-arbitration mediation provision." Kaspar's counsel responded one week later that Kaspar "has elected to mediate this matter" and asked for a list of proposed mediators; however, no mediation ever took place. On October 23, 2019, the trial court signed an order memorializing its April ruling and dismissing Love's suit without

4

prejudice.

**B.     Arbitration**

Love initiated arbitration on January 17, 2020, and Charles Seymore, a former judge, was selected as the arbitrator. Kaspar filed a motion for summary judgment in the arbitration proceeding arguing that Love's claims were barred by limitations. Love filed a response arguing in part that her "claims are eligible for tolling based upon her timely filing suit in state court, diligently obtaining service on [Kaspar], litigation of the arbitration issue, and responsiveness to the Court's Order dismissing her claims without prejudice and compelling arbitration." Kaspar filed a reply, and Love filed a sur-reply arguing in part that "it was [Kaspar's] own delays which caused [her] not to initiate this JWA proceeding until January 2020." Love asserted specifically that Kaspar's September 2019 election to mediate "precluded [her] from initiating a JWA proceeding under the terms of the policy," though she acknowledged that, "[a]fter about [two] months of no action by [Kaspar] to actually follow through on mediation, [she] was left with no choice but to initiate a JWA proceeding in order to actually move her claims forward."

Seymore initially denied Kaspar's summary judgment motion but then granted Kaspar's motion to reconsider that ruling and ordered additional briefing. Subsequently, Seymore withdrew as arbitrator and was replaced by another former judge, Elizabeth Ray. In an order dated March 26, 2022, Ray denied the motion for reconsideration without issuing formal findings of fact and conclusions of law but stating in part that "[Kaspar] received ample and timely notice of the claims" and that "the failure to file the arbitration claim (as opposed to the district court claim) was, in some part, due to the delay by the court as opposed to inaction on the part of [Love]'s counsel."

5

A five-day arbitration hearing ensued in August 2022. At the close of evidence, Kaspar moved to dismiss on the basis of limitations; Ray denied the motion in an order dated August 9, 2022, which reiterated the statements made in the March 26 order. On September 22, 2022, Ray issued a final award containing findings concerning Love's claim and awarding Love $633,580 in damages from Kaspar.[2] The final award does not mention Kaspar's limitations defense at all.

## C.     Post-Arbitration

Kaspar filed a petition in the trial court to vacate the arbitral award on grounds that the arbitrator (1) "committed misconduct by failing to act as a neutral arbitrator," (2) exceeded her powers under the arbitration agreement, and (3) "manifestly disregarded the law." Love moved to confirm the award. *See id.* § 9. After a hearing, the trial court rendered judgment on October 22, 2024, vacating the arbitral award and providing that Love shall take nothing from Kaspar, without stating its reasoning. This appeal followed.

## II.     VACATUR OF ARBITRAL AWARD

By her first issue, Love argues that the trial court erred by vacating the arbitral award because there was no evidence that either arbitrator committed misconduct or exceeded their powers. By her second issue, she argues that "manifest disregard of the law" cannot be grounds for vacating an arbitral award under the FAA, even if the arbitration policy says it can.

## A.     Standard of Review and Applicable Law

Arbitration is strongly favored by Texas law, and judicial review of an arbitration award is "extraordinarily narrow." *E. Tex. Salt Water Disposal Co. v. Werline*, 307 S.W.3d

---

[2] As Love notes, this was less than one-tenth of the amount she requested in her pleadings.

267, 271 (Tex. 2010); *Black v. Shor*, 443 S.W.3d 154, 161 (Tex. App.—Corpus Christi–Edinburg 2013, pet. denied); *McDonald v. Branscomb, P.C.*, No. 13-23-00229-CV, 2024 WL 3897237, at *2 (Tex. App.—Corpus Christi–Edinburg Aug. 22, 2024, pet. denied) (mem. op.). "Subjecting arbitration awards to judicial review adds expense and delay, thereby diminishing the benefits of arbitration as an efficient, economical system for resolving disputes." *CVN Grp., Inc. v. Delgado*, 95 S.W.3d 234, 238 (Tex. 2002). Thus, "[a]ll reasonable presumptions are indulged in favor of the award, and none against it." *Id.*

Our review of a trial court's decision to vacate an arbitration award is de novo. *Black*, 443 S.W.3d at 161–62; *Guillen-Chavez v. ReadyOne Indus., Inc.*, 588 S.W.3d 281, 286 (Tex. App.—El Paso 2019, pet. denied); *In re Guardianship of Cantu de Villarreal*, 330 S.W.3d 11, 17 (Tex. App.—Corpus Christi–Edinburg 2010, no pet.). We review the entire record and "indulge every reasonable inference to uphold the arbitration award." *Guillen-Chavez*, 588 S.W.3d at 286.

The FAA states that a federal district court may vacate an arbitral award:

(1) where the award was procured by corruption, fraud, or undue means;

(2) where there was evident partiality or corruption in the arbitrators, or either of them;

(3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or

(4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a). The court "must" confirm the award if none of the statutory grounds for

7

vacatur or modification are shown. *Id.* § 9.

## B.    Exceedance of Powers

In its motion to vacate and on appeal, Kaspar principally argues that Ray exceeded her powers under FAA § 10(a)(4) by implicitly applying the doctrine of equitable tolling to deem Love's claim timely. *See id.* § 10(a)(4). It specifically contends that Ray exceeded her powers in this regard because: (1) Love did not raise equitable tolling in her pleadings, (2) Ray did not "hold Love to her burden" to prove tolling, (3) there was "no legal or factual basis" to support the decision, and (4) Ray's decision was based "merely" on what "she determine[d] to be fair or just" in contravention of the policy. Kaspar additionally contends that Ray exceeded her authority by failing to provide "a summary of all findings of fact and law necessary to support [her] decision" and by "modifying her powers" under the policy with respect to the dispositive issue it raised.

An arbitrator exceeds her authority under FAA § 10(a)(4) when she acts "contrary to express contractual provisions." *Kemper Corp. Servs., Inc. v. Comput. Scis. Corp.*, 946 F.3d 817, 822 (5th Cir. 2020); *see W. Emps. Ins. v. Jefferies & Co.*, 958 F.2d 258, 262 (9th Cir. 1992) (observing that arbitrators may "exceed their powers" under the FAA "when they fail to meet their obligations, as specified in a given contract, to the parties"). "If the contract creates a plain limitation on the authority of an arbitrator, we will vacate an award that ignores the limitation."[3] *Rain CII Carbon, LLC v. ConocoPhillips Co.*, 674 F.3d 469, 472 (5th Cir. 2012) ("Limitations on an arbitrator's authority must be plain and

---

[3] Although we are reviewing the arbitrator's failure to fulfill an obligation under the arbitration agreement, rather than overreaching or affirmatively performing acts which were not authorized, the appropriate nomenclature for our review is exceedance of power. *See Cat Charter, LLC v. Schurtenberger*, 646 F.3d 836, 843 (11th Cir. 2011) ("[A]rbitrators may exceed their power within the meaning of § 10(a)(4) if they fail to comply with mutually agreed-upon contractual provisions in an agreement to arbitrate.").

unambiguous."). But a party seeking vacatur under FAA § 10(a)(4) "bears a heavy burden." *Oxford Health Plans LLC v. Sutter*, 569 U.S. 564, 569 (2013). In determining whether the burden was met, we examine the language in the arbitration agreement. *In re Guardianship of Cantu de Villarreal*, 330 S.W.3d at 18. Any doubts concerning the scope of what is arbitrable must be resolved in favor of arbitration, but we do not defer to the arbitrator if she "exceeds the express limitations of [her] contractual mandate." *Kemper Corp. Servs., Inc.*, 946 F.3d at 821.[4]

As noted, Kaspar contends in part that Ray "exceeded her authority by failing to include within the final award 'a summary of all findings of fact and law necessary to support [her] decision'" on the dispositive limitations issue, as required by section II.G.6 of the policy. In support of these arguments, Kaspar cites caselaw establishing that "courts may set aside awards when the arbitrator exceeds his contractual mandate by acting contrary to express contractual provisions." *PoolRe Ins. Corp. v. Organizational Strategies, Inc.*, 783 F.3d 256, 262 (5th Cir. 2015); *see Delta Queen Steamboat Co. v.*

---

[4] Parties requesting vacatur on § 10(a)(4) grounds typically assert that the arbitrator ruled on an issue or party which was not properly before it. *See, e.g.*, *BNSF Ry. Co. v. Level 3 Commc'ns, LLC*, 2026 Tex. Bus. 8, ¶ 16, 2026 WL 509825, at *3 (1st Div. 2026) (rejecting appellant's contention that arbitration panel "exceeded its authority when it replaced a contractually-mandated appraisal process with arbitration"); *Elgohary v. Herrera*, 405 S.W.3d 785, 789 (Tex. App.—Houston [1st Dist.] 2013, no pet.) ("When the arbitrator issues an award against a party not subject to arbitration, he has exceeded his powers."); *In re Guardianship of Cantu de Villarreal*, 330 S.W.3d 11, 18 (Tex. App.—Corpus Christi–Edinburg 2010, no pet.) (noting the authority of an arbitrator is derived from the arbitration agreement and is limited to "matters submitted therein either expressly or by necessary implication"). In those cases, "the proper inquiry is not whether the arbitrator decided an issue correctly, but rather, whether he had the authority to decide the issue at all." *Forest Oil Corp. v. El Rucio Land & Cattle Co.*, 518 S.W.3d 422, 431 (Tex. 2017); *see BNSF Ry. Co.*, 2026 WL 509825, at *3 ("Because arbitration is the byproduct of the parties' agreement, vacatur on the ground that the arbitrators exceeded their authority requires a showing that the arbitrators decided a matter that the agreement did not submit to their judgment."); *see Jock v. Sterling Jewelers Inc.*, 646 F.3d 113, 121 (2d Cir. 2011) (noting that the focus of the judicial inquiry is "whether the arbitrators had the power, based on the parties' submissions or the arbitration agreement, to reach a certain issue, not whether the arbitrators correctly decided that issue"). Kaspar's first specific complaint is of this type, in that it asserts—based on the fifth and sixth sentences in section II.G.6 of the policy—that Ray lacked authority to consider equitable tolling because it was not pleaded by Love. However, the remainder of Kaspar's complaints focus on the merits of Ray's decision.

*Dist. 2 Marine Eng'rs Beneficial Ass'n, AFL-CIO*, 889 F.2d 599, 604 (5th Cir. 1989) ("[A]rbitral action contrary to express contractual provisions will not be respected.").

We agree that vacatur was appropriate on these grounds. In general, "arbitrators are not required to disclose or explain the reasons underlying an award." *Antwine v. Prudential Bache Sec., Inc.*, 899 F.2d 410, 412 (5th Cir. 1990) (citing *United Steel Workers of Am. v. Enter. Wheel & Car Corp.*, 363 U.S. 593, 598 (1960)). "The policy behind such a rule is manifest. If arbitrators were required to issue an opinion or otherwise detail the reasons underlying an arbitration award, the very purpose of arbitration—the provision of a relatively quick, efficient and informal means of private dispute settlement—would be markedly undermined." *Id.* But, as the Texas Supreme Court has recognized, arbitration is a creature of contract and parties are free to modify any generally applicable common-law rules. *See Nafta Traders, Inc. v. Quinn*, 339 S.W.3d 84, 95–96 (Tex. 2011) ("[I]f there is one thing which more than another public policy requires it is that men of full age and competent understanding shall have the utmost liberty of contracting, and that their contracts when entered into freely and voluntarily shall be held sacred and shall be enforced by Courts of justice." (quoting *Wood Motor Co. v. Nebel*, 238 S.W.2d 181, 185 (Tex. 1951)).

Importantly, though there has been some uncertainty as to whether and to what extent the FAA permits restrictions on an arbitrator's legal decision-making authority,[5]

---

[5] In *Hall Street Associates, L.L.C. v. Mattel, Inc.*, the United States Supreme Court held that parties may not contractually agree to "supplement" § 10(a)(4)'s enumerated grounds for vacatur to include the arbitrator's "manifest disregard of the law," which had historically been considered grounds for vacatur under the common law. 552 U.S. 576, 578 (2008) (holding "the statutory grounds are exclusive" notwithstanding the parties' agreement). The ruling was largely based on what the Court described as "a national policy favoring arbitration with just the limited review needed to maintain arbitration's essential virtue of resolving disputes straightaway." *Id.* at 588 (observing that "[a]ny other reading opens the door to the full-bore legal and evidentiary appeals that can render informal arbitration merely a prelude to a more

there is no doubt that the FAA permits restrictions on the arbitrator's authority in a multitude of other manners. *See*, *e.g.*, *Ostrom v. Worldventures Mktg., LLC*, 160 F. Supp. 3d 942, 952 (M.D. La. 2016) (arbitration clause required arbitrator to apply Louisiana law); *21st Fin. Servs., L.L.C. v. Manchester Fin. Bank*, 747 F.3d 331, 336 (5th Cir. 2014) ("Parties may limit the scope of arbitration through contract."); *Cat Charter, LLC v. Schurtenberger*, 646 F.3d 836, 843 (11th Cir. 2011) (noting an arbitrator may exceed her authority under § 10(a)(4) "by failing to provide an award in the form required by an arbitration agreement"); *Brook v. Peak Int'l, Ltd.*, 294 F.3d 668, 672 (5th Cir. 2002) ("Parties to an arbitration agreement may determine by contract the method for appointment of arbitrators."); *see also Stage Stores, Inc. v. Gunnerson*, 477 S.W.3d 848, 854 (Tex. App.—Houston [1st Dist.] 2015, no pet.) ("Although the parties have broad authority to modify by contract many of the standard rules for arbitration, the parties cannot expand the grounds for vacatur in judicial review."). In particular, Love cites no

---

cumbersome and time-consuming judicial review process"). The Fifth Circuit interpreted *Hall Street* to mean that "manifest disregard of the law as an independent, statutory ground for setting aside an award [under the FAA] must be abandoned and rejected." *Citigroup Glob. Mkts., Inc. v. Bacon*, 562 F.3d 349, 358 (5th Cir. 2009).

Later, in *Nafta Traders, Inc. v. Quinn*, the Texas Supreme Court upheld an arbitration clause providing that the arbitrator "does not have authority (i) to render a decision which contains a reversible error of state or federal law, or (ii) to apply a cause of action or remedy not expressly provided for under existing state or federal law." 339 S.W.3d 84, 91 (Tex. 2011); *see Hoskins v. Hoskins*, 497 S.W.3d 490, 494 (Tex. 2016) (noting that the parties in *Nafta* "essentially agreed to limit [the] arbitrator's power to that of a judge, whose decisions are reviewable on appeal" (quotation omitted)). The arbitration clause in *Nafta* did not specify whether the FAA or Texas Arbitration Act (TAA) applied, but the Court, applying both statutes, held: (1) "the TAA presents no impediment to an agreement that limits the authority of an arbitrator in deciding a matter and thus allows for judicial review of an arbitration award for reversible error"; and (2) "the FAA does not preempt enforcement of an agreement for expanded judicial review of an arbitration award enforceable under the TAA." 339 S.W.3d at 97, 101. According to the *Nafta* Court, the "broad freedom of contract" embodied in Texas law outweighs any policy favoring limited review of arbitration awards. *See id.* at 95–96.

Unlike *Nafta*, this case involves only the FAA, but the parties enjoy a "broad freedom of contract" no matter what statute is implicated, and the exception to this freedom carved out in *Hall Street*—i.e., that parties are not free to contract for "manifest disregard of the law" as additional grounds for vacatur under the FAA—does not preclude the parties from requiring the arbitrator to submit detailed findings with her award.

11

authority, and we find none, prohibiting a court from vacating an arbitral award under FAA § 10(a)(4) on the basis that the award did not contain findings and conclusions as explicitly required by the arbitration agreement.

Here, Ray's eight-page final arbitral award consisted of more than two thousand words, none of which addressed Kaspar's statute of limitations defense—which was undisputably properly pleaded in the arbitration proceedings and was the subject of multiple motions—or Love's equitable-tolling counter-defense. As demonstrated by the arguments made in this appeal, the limitations defense and tolling counter-defense comprised a central part of the parties' dispute, and we find that the factual and legal bases for the arbitrator's rulings on those issues are "necessary to support" her decision.

Love does not dispute that such findings were "necessary to support" the decision but instead argues that Ray complied with the policy by issuing two orders—one upon denying Kaspar's motion for reconsideration of its summary judgment motion, and one upon denying Kaspar's motion to dismiss at the conclusion of the final hearing—purportedly explaining her reasons for rejecting the limitations defense. We disagree that these orders satisfied the arbitrator's duty under the agreement. The orders stated that "[Kaspar] received ample and timely notice of the claims" and "the failure to file the arbitration claim (as opposed to the district court claim) was, in some part, due to the delay by the court as opposed to inaction on the part of [Love]'s counsel." However, the orders did not explicitly conclude whether Kaspar's limitations defense had merit, did not conclude that the limitations period was tolled for any reason, and did not provide any factual findings which could support any ruling on those dispositive issues.[6]

---

[6] It is undisputed that Love's cause of action accrued on March 21, 2017; that it was subject to a

In any event, the agreement required any such findings to be included in the final award. They were not. Accordingly, the arbitrator exceeded her powers and vacatur under the FAA was proper. *See* 9 U.S.C. § 10(a)(4); *W. Emps. Ins.*, 958 F.2d at 262 (vacating award under the FAA because arbitrators failed "to accompany any award with a statement of their findings of fact and conclusions of law" as required by the arbitration clause); *Cat Charter, LLC*, 646 F.3d at 843; *W. Can. S.S. Co. v. Cia. de Nav. San Leonardo*, 105 F. Supp. 452, 453 (S.D.N.Y. 1952) (vacating award where two arbitrators making award failed to appoint a third arbitrator as specified in the contract); *see also Rain CII Carbon, LLC*, 674 F.3d at 474 (affirming confirmation of award where contract merely required arbitrator to render a "reasoned award" and noting that, "if [appellee] wanted a more thorough discussion of why the arbitrator reached the decision he did, it could have contracted for an award to include findings of fact and conclusions of law"). *Cf. Denbury Onshore, LLC v. Texcal Energy S. Tex., L.P.*, 513 S.W.3d 511, 520–21 (Tex. App.—Houston [14th Dist.] 2016, no pet.) (finding, where agreement required "a joint, written decision which shall include a list of findings, with supporting evidentiary references and reasons," that arbitrators did not exceed their powers by issuing a "13-page written award, which provided almost four pages of background facts" and "five

two-year statute of limitations, *see* TEX. CIV. PRAC. & REM. CODE § 16.003(a); and that Love initiated arbitration on January 17, 2020, nearly ten months after the limitations period expired. Even if, as the arbitrator claimed, Love's delay in initiating arbitration was due "in part" to the trial court's delay in ruling on Kaspar's motion to compel arbitration, Love never claimed (nor was there any evidence) that she was "prevented" from initiating arbitration during the relevant time period. *See Walker v. Hanes*, 570 S.W.2d 534, 540 (Tex. App.—Corpus Christi 1978, writ ref'd n.r.e.) (holding that when "a person is prevented from exercising his legal remedy by the pendency of legal proceedings, the time during which he is thus prevented should not be counted against him in determining whether limitations have barred his right"). Further, to the extent Love claimed in the trial court that she was "prevented" from initiating arbitration due to Kaspar's September 2018 election to mediate, the record conclusively refutes that theory, as Love concedes she was able to initiate arbitration "out of an abundance of caution" the following January. Nonetheless, the award is completely silent on the facts concerning this central issue and on the application of the law to the facts.

pages of analysis detailing reasons for its findings").

We overrule Love's first issue. In light of our conclusion, we need not consider the remaining grounds for vacatur offered by Kaspar or Love's second issue. *See* TEX. R. APP. P. 47.1.

## III. ATTORNEY'S FEES AND COSTS

By her third issue, Love argues she is entitled to attorney's fees and costs incurred as a result of Kaspar's challenges to the arbitral award. *See Stage Stores, Inc.*, 477 S.W.3d at 863–64 (noting that, when a party's challenge to an arbitration award under the FAA is "without merit" and its refusal to abide by the award is "without justification," a Texas court may award attorney's fees to the party seeking to confirm the arbitration award). *Cf. Trans Chem. Ltd. & China Nat'l Mach. Imp. & Exp. Corp.*, 978 F. Supp. 266, 311 (S.D. Tex. 1997) ("The FAA does not provide for attorney's fees to a party who is successful in confirming an arbitration award in federal court."). Here, because Kaspar's challenge to the arbitral award had merit, the trial court did not err in declining to award fees to Love. We overrule her third issue.

## IV. CONCLUSION

The trial court's judgment is affirmed.

YSMAEL D. FONSECA
Justice

Delivered and filed on the
9th day of April, 2026.

14